

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) CROSSFIRST BANK, a Kansas Banking Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>(1) NBI PROPERTIES, INC. an Oklahoma corporation;<br>(2) N B I SERVICES, INC., an Oklahoma corporation;<br>(3) ORVILLE B. NICHOLS, individually;<br>(4) RICHARD J. NICHOLS, individually;<br>(5) NICHOLS BROTHERS, INC., an Oklahoma corporation;<br>(6) CANO PETROLEUM, INC., a Delaware corporation;<br>(7) LADDER COMPANIES, INC., a Delaware corporation;<br>(8) W.O. ENERGY OF NEVADA, INC., a Nevada corporation;<br>(9) DALCO PETROLEUM, INC., an Oklahoma corporation;<br>(10) GRANT OIL AND GAS CORPORATION, an Oklahoma corporation;<br>(11) THE NICHOLS COMPANIES, INC., formerly known as NOCO Investment Co., Inc., an Oklahoma corporation;<br>(12) THE OPERATING COMPANY, an Oklahoma corporation;<br>(13) TULSA ENERGY, INC., an Oklahoma corporation;<br>(14) TULSA PETROLEUM RESOURCES, INC., an Oklahoma corporation;<br>(15) VP SUBCO, INC., an Oklahoma corporation;<br>(16) YALE AVENUE, LTD., an Oklahoma corporation;<br>(17) RED WATER RESOURCES, INC., an Oklahoma corporation;<br>(18) CANO PETRO OF NEW MEXICO, INC., a Texas corporation;<br>(19) SQUARE ONE ENERGY, INC., a Texas corporation; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br>F I L E D<br>MAR 1 6 2018<br>Mark C. McCartt, Clerk<br>U.S. DISTRICT COURT<br><br><br>**18 CV  147 TCK - JFJ**<br><br>Case No. |



(20) WO ENERGY, INC., a Texas corporation; )
(21) W.O. OPERATING COMPANY, LTD., a Texas limited partnership; )
(22) W.O. PRODUCTION COMPANY, LTD., a Texas limited partnership; and )
(23) HARVARD PROPERTIES, INC., an Oklahoma Corporation, )
)
)
Defendants. )

# COMPLAINT

CrossFirst Bank, a Kansas banking corporation, on behalf of itself and as administrative agent and collateral agent for certain lenders described more particularly herein below ("CrossFirst"), hereby makes its Complaint against defendants, and alleges and states as follows:

## PARTIES, JURISDICTION AND VENUE

1.  CrossFirst is and was at all times mentioned herein, a banking corporation duly organized and existing under the laws of the State of Kansas, with its principal place of business located in Leawood, Kansas. CrossFirst is a citizen of the State of Kansas. CrossFirst is authorized to bring this action on its own behalf, and as administrative agent and collateral agent for Arena Limited SPV, LLC, successor-in-interest to Origin Bank, formerly known as Community Trust Bank, Kirkpatrick Bank and Valley National Bank, lenders signatory (sometimes referred to herein collectively as the "Lenders") to that certain Revolving Credit Agreement, dated effective as of December 18, 2014, see Exhibit "1" hereto, as amended by the First Amendment thereto dated as of June 19, 2015, see Exhibit "1-A" hereto, as further amended by the Second Amendment thereto dated as of November 20, 2015, see Exhibit "1-B" hereto, as further amended by the Third Amendment thereto dated as of June 30, 2016, see Exhibit "1-C" hereto, as further amended by the Fourth Amendment thereto dated as of December 15, 2016, see Exhibit "1-D" hereto, as further amended by the letter agreement dated

as of May 18, 2017, see Exhibit "1-E" hereto, and as further amended by the Fifth Amendment thereto dated as of June 15, 2017, see Exhibit "1-F" hereto (collectively, the "Revolver").

2. NBI PROPERTIES, INC. ("NBI"), an Oklahoma corporation with its principal place of business located in the State of Oklahoma, is a citizen of the State of Oklahoma.

3. N B I SERVICES, INC. ("Services", together with NBI are sometimes referred to herein collectively, as the "Initial Borrower"), an Oklahoma corporation with its principal place of business located in the State of Oklahoma, is a citizen of the State of Oklahoma.

4. ORVILLE B. NICHOLS ("Orville Nichols"), an individual who resides in Tulsa County, State of Oklahoma is a citizen of the State of Oklahoma.

5. RICHARD J. NICHOLS ("Richard Nichols"), an individual who resides in Tulsa County, State of Oklahoma, is a citizen of the State of Oklahoma.

6. NICHOLS BROTHERS, INC. ("Nichols Brothers", together with the Initial Borrower are sometimes referred to herein collectively, as the "Borrower"), an Oklahoma corporation with its principal place of business located in the State of Oklahoma, is a citizen of the State of Oklahoma.

7. CANO PETROLEUM, INC. ("Cano"), a Delaware corporation with its principal place of business located in the State of Texas, is a citizen of the States of Delaware and Texas.

8. LADDER COMPANIES, INC. ("Ladder"), a Delaware corporation with its principal place of business located in the State of Texas, is a citizen of the States of Delaware and Texas.

9. W.O. ENERGY OF NEVADA, INC. ("WO Nevada"), a Nevada corporation with its principal place of business located in the State of Texas, is a citizen of the States of Nevada and Texas.

10. DALCO PETROLEUM, INC. ("Dalco"), an Oklahoma corporation with its principal place of business located in the State of Oklahoma, is a citizen of the State of Oklahoma.

11. GRANT OIL AND GAS CORPORATION ("Grant"), an Oklahoma corporation with its principal place of business located in the State of Oklahoma, is a citizen of the State of Oklahoma.

12. THE NICHOLS COMPANIES, INC., formerly known as NOCO Investment Co., Inc. ("Nichols Companies"), an Oklahoma corporation with its principal place of business located in the State of Oklahoma, is a citizen of the State of Oklahoma.

13. THE OPERATING COMPANY ("Operating"), an Oklahoma corporation, with its principal place of business located in the State of Oklahoma, is a citizen of the State of Oklahoma.

14. TULSA ENERGY, INC. ("TEI"), an Oklahoma corporation with its principal place of business located in the State of Oklahoma, is a citizen of the State of Oklahoma.

15. TULSA PETROLEUM RESOURCES, INC. ("TPR"), an Oklahoma corporation, with its principal place of business located in the State of Oklahoma, is a citizen of the State of Oklahoma.

16. VP SUBCO, INC. ("Subco"), an Oklahoma corporation with its principal place of business located in the State of Oklahoma, is a citizen of the State of Oklahoma.

17. YALE AVENUE, LTD. ("Yale"), an Oklahoma corporation with its principal place of business located in the State of Oklahoma, is a citizen of the State of Oklahoma.

18. RED WATER RESOURCES, INC. ("RWR"), an Oklahoma corporation with its principal place of business located in the State of Oklahoma, is a citizen of the State of Oklahoma.

19. CANO PETRO OF NEW MEXICO, INC. ("Cano New Mexico"), a Texas corporation with its principal place of business located in the State of Texas, is a citizen of the State of Texas.

20. SQUARE ONE ENERGY, INC. ("Square One"), a Texas corporation with its principal place of business located in the State of Texas, is a citizen of the State of Texas.

21. WO ENERGY, INC. (WO Energy"), a Texas corporation, with its principal place of business located in the State of Texas, is a citizen of the State of Texas. WO Energy is the general partner of WO Operating and WO Production.

22. W.O. OPERATING COMPANY, LTD. ("WO Operating") is a Texas limited partnership with its principal place of business located in the State of Texas. Upon information and belief, none of the partners of WO Operating are citizens of the State of Kansas.

23. W.O. PRODUCTION COMPANY, LTD. ("WO Production") is a Texas limited partnership, with its principal place of business located in the State of Texas. Upon information and belief, none of the partners of WO Operating are citizens of the State of Kansas.

24. HARVARD PROPERTIES, INC. ("Harvard"), an Oklahoma corporation with its principal place of business located in the State of Oklahoma, is a citizen of the State of Oklahoma.

25. Cano, Ladder, WO Nevada, Dalco, Grant, Nichols Companies, Operating, TEI, TPR, Subco, Yale, RWR, Cano New Mexico, Square One, WO Energy, WO Operating, and WO Production are sometimes referred to herein individually and collectively as the "Initial

Affiliates". The Initial Affiliates and Harvard are sometimes referred to herein individually and collectively as the "Affiliates".

26. The amount in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs.

27. This Court therefore has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a).

28. A substantial part of the events or omissions giving rise to the claims asserted herein occurred in the Northern District of Oklahoma, thus, venue properly lies in this Court pursuant to 28 U.S.C. § 1391(b)(2).

29. Additionally, each defendant has consented to the jurisdiction of this Court and to venue in this district pursuant to the terms of the Revolver, or the terms of certain guaranty agreements described below, each with an effective date of December 18, 2014.

## BACKGROUND

30. On or about December 18, 2014, the Lenders and Initial Borrower entered into the initial Revolving Credit Agreement. On or about the same date, Initial Borrower and certain of the Initial Affiliates executed and delivered the mortgages and deeds of trust (collectively, the "Initial Mortgages"), the Pledge, Security Agreement and Assignment (the "Initial Security Agreements"), financing statements (collectively, the "Initial Financing Statements"), Orville Nichols and Richard Nichols each executed and delivered his Collateral Assignment of Life Insurance Policy (collectively, the "Assignments"), Initial Borrower executed and delivered certain promissory notes (collectively, the "Initial Revolver Notes"), Orville Nichols and Richard Nichols each executed and delivered their Guaranty Agreement (the "Individual Guaranties"), Nichols Brothers executed and delivered its Guaranty Agreement  (the "Nichols Brothers Guaranty") and the Initial Affiliates each executed and delivered their Guaranty Agreements

(the "Initial Affiliate Guaranties), and on or about June 30, 2016, Harvard executed and delivered its mortgages and deeds of trust (collectively, the "Harvard Mortgage", together with the Initial Mortgages are sometimes referred to herein collectively as the "Mortgages"), the Pledge, Security Agreement and Assignment (the "Harvard Security Agreements", together with the Initial Security Agreements are sometimes referred to herein collectively as the "Security Agreements"), financing statements (the "Harvard Financing Statements", together with the Initial Financing Statements are sometimes referred to herein collectively as the "Financing Statements"), and Harvard executed and delivered its Guaranty Agreement (the "Harvard Guaranty", together with the Individual Guaranties, the Nichols Brothers Guaranty and the Initial Affiliate Guaranties are sometimes referred to collectively herein as the "Guaranties"), and on or about December 15, 2016, Initial Borrower and Harvard (sometimes referred to herein collectively as "Borrower") executed and delivered certain promissory notes (collectively, the "Revolver Notes"), each being described more particularly below, in favor of CrossFirst.[1]

31.     Pursuant to the Loan Documents, Lenders established a revolving line of credit in favor of Initial Borrower in the original maximum amount of $75 million. *See* Exhibit "1". As a result of certain amendments, renewals, modifications and extensions thereof, the Loan Documents require that all unpaid and outstanding principal and accrued but unpaid interest due and owing to Lenders by Borrower was to be paid on the final maturity date of October 15, 2017. See Revolver Notes, attached hereto as Exhibits "2", "2-A", "2-B" and "2-C".

32.     To secure all payments due under the Revolver and the Revolver Notes and all renewals, extensions, changes in form, replacements, consolidations, modifications and

---

[1] The Revolver, Mortgages, Security Agreements, Financing Statements, Assignments, Revolver Notes and Guaranties, as amended, renewed, modified and extended, are sometimes referred to herein collectively as the "Loan Documents."

7

rearrangements, and all other indebtedness owed to Lenders then or thereafter created, Borrower and Affiliates mortgaged to CrossFirst all of their respective rights, titles and interests in certain real property located in the States of Texas, Louisiana, Oklahoma and New Mexico as more fully described in the exhibits attached to the Mortgages. Borrower, Initial Affiliates, and Harvard also mortgaged to CrossFirst all of their respective rights, titles and interests in certain oil and gas leases and the accounts, proceeds, agreements, fixtures, machinery, equipment, hydrocarbons, and other items associated with the leases. See Deed of Trust, Security Agreement, Financing Statement and Assignment (Texas), attached hereto as Exhibit "3"; Mortgage, Collateral Assignment and Security Agreement (Louisiana), attached hereto as Exhibit "3-A". Mortgage, Security Agreement, Financing Statement and Assignment (Oklahoma), attached hereto as Exhibit "3-B", Mortgage, Security Agreement, Financing Statement and Assignment (New Mexico), attached hereto as Exhibit "3-C"; Deed of Trust, Security Agreement, Financing Statement and Assignment (Texas), attached hereto as Exhibit "3-D"; and Mortgage, Security Agreement, Financing Statement and Assignment (Oklahoma), attached hereto as Exhibit "3-E". After the execution of the Mortgages, certain of the interests covered by the Mortgages were released of record. See Exhibits "3-F", "3-G" , and "3-H" attached hereto (the "Partial Releases"). As a result of the Partial Releases, the remaining real property, improvements, fixtures, hydrocarbon, mineral and other interests that are covered by the Mortgages are sometimes referred to herein collectively as the "Mortgaged Properties".

33. The Mortgages also contained assignments from Borrower and Affiliates to CrossFirst of all hydrocarbons and other minerals, and the proceeds therefrom, produced or to be produced from Borrower's and Affiliates' interests in the oil and gas leases, mineral interests, properties and other interests then or thereafter constituting part of the Mortgaged Properties, as

well as proceeds payable or due to become payable to Borrower and Affiliates under their respective leases, assignments and contracts and any amounts, revenues or income payable to Borrower and Affiliates under any gas pipeline or processing plant or unit then or thereafter constituting part of the mortgaged real property. See Exhibits "3", "3-A", "3-B", "3-C","3-D", and "3-E".

34. Pursuant to the Mortgages, Security Agreements and Assignments, CrossFirst was granted a first priority, continuing and continuous security interest in all of the then-owned and after acquired Collateral and Other Collateral, including, but not limited to, the intangible and personal property of Borrower and Affiliates, and the operational rights of the Borrower and Affiliates (as defined in the Mortgages, Security Agreements and Assignments, and referred to herein as the "Personal Property"). Id.

35. CrossFirst has filed with the appropriate state authorities its Mortgages and UCC Financing Statements, perfecting its security interests in the Personal Property. See Schedule of Filings - Mortgages and UCC Financing Statements, attached hereto as Exhibit "4".

36. As of the filing of this Complaint, CrossFirst is the proper party in interest to bring an action to enforce the Lenders' rights and remedies granted by the Loan Documents. *See* Exhibits "1" through "1-F".

37. Pursuant to the Revolver, Borrower agreed to pay, when due and owing, all Indebtedness (as defined in the Loan Documents). *See* Exhibits "1" through "1-F".

38. The Loan Documents provide that if Borrower fails to make any monthly or other scheduled payment when due or fails to duly observe, perform or comply with any covenant, agreement or term contained in the Loan Documents, CrossFirst may immediately declare the Revolver terminated and declare the Revolver Notes and any other Indebtedness (as defined in

9

the Loan Documents) owed by Borrower to Lenders immediately due and payable. See Exhibits "1" through "1-F".

39. Additionally, in the event of default, all liens evidenced by the Loan Documents shall be subject to foreclosure at CrossFirst's option. See Exhibits "3" through "3-E".

40. Borrower failed to pay all unpaid and outstanding principal and interest due and owing by the final maturity date of October 15, 2017, and is therefore in default of the Loan Documents.

41. As of March 14, 2018, the total aggregate amount outstanding under the Loan Documents was $29,683,550.34, consisting of $29,087,695.09 in principal, $594,355.25 in interest, and $1,500 in late fees, plus other charges including but not limited to legal fees and expenses, with interest accruing on the outstanding principal balance thereafter at a per diem default rate of $7,069.9258899.

42. Pursuant to the Guaranties, Orville Nichols, Richard Nichols, Nichols Brothers and the Affiliates (sometimes referred to herein collectively, as the "Guarantors"), jointly and severally guaranteed to CrossFirst, absolutely, unconditionally and irrevocably, the prompt performance and payment when due, whether at maturity, by acceleration or otherwise, and at any and all times thereafter, of the indebtedness, liabilities and obligations, of every kind and nature of Borrower to Lenders, as evidenced by the Revolver Notes and other Loan Documents, including, without limitation, the principal, interest, commitment fees, non-usage fees, agency fees, attorney's fees, filing, recording and other perfection costs, out-of-pocket expenses, court costs and collection expenses and costs (all of the foregoing being hereinafter collectively referred to as the "Guaranteed Obligations"). See Exhibit "5" (Individual Guaranties); Exhibit

"5-A" (Nichols Brothers Guaranty); Exhibit "5-B" (Initial Affiliate Guaranties) and Exhibit "5-C" (Harvard Guaranty).

43. Pursuant to the Guaranties, each Guarantor agreed that such Guarantor's liability under its Guaranty shall be joint and several and primary and direct, and that CrossFirst may pursue each Guarantor immediately and directly without first (a) pursing any remedy against Borrower or any other Guarantor, (b) commencing or obtaining any judgment against Borrower or any other Guarantor, or (c) foreclosing or realizing on any security interest in any property of Borrower or any Guarantor in which CrossFirst holds a security interest.

**FIRST CAUSE OF ACTION**
**Declaratory Judgment**

For its first cause of action, CrossFirst incorporates the foregoing paragraphs of this Complaint and further alleges and states as follows:

44. A controversy exists as to the rights of CrossFirst against each defendant as to the following and therefore, CrossFirst seeks entry of a declaratory judgment establishing that the following are true and correct statements of fact:

45. Default has been made upon Loan Documents in that the payments set out therein have not been paid as and when due by Borrower.

46. The Loan Documents provide that all costs and expenses, including attorneys' fees, incurred by CrossFirst in protecting and enforcing its rights under the Mortgages constitute a demand obligation owing by Borrower to CrossFirst and shall draw interest at the Default Rate (as defined in the Loan Documents) and shall be added to and constitute a portion of the Indebtedness (as defined in the Loan Documents). *See* Exhibit "3" through Exhibit "3-E".

47. CrossFirst has complied with all the terms, conditions and provisions of the Loan Documents and is duly empowered to bring this suit.

48. The total amount of CrossFirst's claim, including all amounts which continue to accrue thereon, is secured by the Mortgages, Security Agreements and Assignments and constitutes a first, prior and superior lien upon the Mortgaged Properties, Personal Property and all associated interests (collectively, the "Property").

CrossFirst reserves the right to seek entry of an order directing foreclosure of its lien rights in the Property.

## SECOND CAUSE OF ACTION
### Money Judgment

For its second cause of action, CrossFirst incorporates the foregoing paragraphs of this Complaint and further alleges and states as follows:

49. Pursuant to the terms of the Loan Documents, Borrower is liable for the full amount of CrossFirst's claims including all amounts which continue to accrue thereon.

50. As of March 14, 2018, the total aggregate amount outstanding under the Loan Documents was $29,683,550.34, consisting of $29,087,695.09 in principal, $594,355.25 in interest, and $1,500 in late fees, plus other charges including but not limited to legal fees and expenses, with interest accruing on the outstanding principal balance thereafter at a per diem default rate of $7,069.9258899. CrossFirst is entitled to an in personam money judgment against Borrower, jointly and severally, for all such amounts.

## THIRD CAUSE OF ACTION
### Foreclosure of Mortgages

For its third cause of action, CrossFirst incorporates the foregoing paragraphs of this Complaint and further alleges and states as follows:

51. Borrower and Affiliates are in default under each Mortgage by virtue of its defaults under the Loan Agreements and CrossFirst is entitled to have the Mortgages foreclosed.

WHEREFORE, CrossFirst requests that it recover a judgment from and against all Defendants on CrossFirst's third cause of action (i) declaring CrossFirst's mortgage liens on the Mortgaged Properties to be valid, first and prior mortgage liens for the amount of the judgment awarded to CrossFirst on its second cause of action; (ii) ordering the Mortgages foreclosed and the Mortgaged Properties sold, with or without appraisement, as CrossFirst may elect, with the proceeds of such sale to be applied by CrossFirst to all costs herein and then to the payment of the judgment awarded to it herein, with the surplus, if any, paid into the Court; (iii) determining that the rights of defendants in and to the Mortgaged Properties are inferior and subordinate to the liens of the Mortgages, and that upon confirmation of the sale of the Mortgaged Properties, defendants and all persons claiming by, through or under them, be forever barred, foreclosed and enjoined from asserting or claiming any right, title, interest, estate, or equity of redemption in or to the Mortgaged Properties, or any part thereof; and (iv) for such further relief as the Court may find appropriate.

### FOURTH CAUSE OF ACTION
**Personal Property**

For its fourth cause of action, CrossFirst incorporates the foregoing paragraphs of this Complaint and further alleges and states as follows:

52. Default has been made upon Loan Documents in that the payments set out therein have not been paid as and when due.

53. The Loan Documents provide that in case of a foreclosure of the Security Interests in the Personal Property described therein, the Borrower and Affiliates will pay attorneys' fees as therein provided and that the same shall be a further charge and lien upon the Personal Property.

54. CrossFirst has complied with all the terms, conditions and provisions of the Loan Documents and is duly empowered to bring this suit.

55. The total amount of CrossFirst's claim, including all amounts which continue to accrue thereon, is secured by the Borrower's and Affiliates' Personal Property and constitutes a first, prior and superior lien upon the same.

56. CrossFirst is entitled to an order for delivery of the Personal Property and to have the same sold at a commercially reasonable sale thereafter.

## FIFTH CAUSE OF ACTION
### Suit on Guaranties

For its fifth cause of action, CrossFirst incorporates the foregoing paragraphs of this Complaint and further alleges and states as follows:

57. Borrower is in default under the terms of the Loan Documents. Despite demand for immediate payment of all amounts due under the Loan Documents, Borrower has failed to pay all such amounts and Borrower is indebted for the amount outstanding under the Loan Documents, as set forth in paragraph 41 of this Complaint.

58. Pursuant to the Guaranties, the Guarantors are, jointly and severally, indebted for the Guaranty Obligations.

59. As of March 14, 2018, the Guaranty Obligations are in the total aggregate amount of $29,683,550.34, consisting of $29,087,695.09 in principal, $594,355.25 in interest, and $1,500 late fees, plus other charges including but not limited to legal fees and expenses, with interest accruing on the outstanding principal balance thereafter at a per diem default rate of $7,069.9258899.

## SIXTH CAUSE OF ACTION
### Appointment of Receiver

For its sixth cause of action, CrossFirst incorporates the foregoing paragraphs of this Complaint and further alleges and states as follows:

60. Borrower has failed to perform the terms and conditions of the Loan Documents, including, but not limited to, the failure to make the payments due thereon and the failure to cure defaults after due notice and demand.

61. The Mortgages provide that in the event of default, CrossFirst shall be entitled to the appointment of a receiver. *See* Exhibits "3" through Exhibit "3-E".

62. Pursuant to Federal Rule of Civil Procedure 66, federal common law and Okla. Stat. tit. 12, § 1551(2)(c), CrossFirst is entitled to the immediate appointment of a receiver to take possession of the Property, protect and preserve the same and, if appropriate, liquidate the same.

63. CrossFirst has filed a separate motion seeking an immediate hearing and the entry of an order appointing a receiver over the Property.

## REQUEST FOR RELIEF

**WHEREFORE, CROSSFIRST REQUESTS** a judgment in personam against Borrower, and each of them, in the total aggregate amount of $29,683,550.34, which consists of principal in the amount of $29,087,695.09, plus interest accrued to March 14, 2018, at the default rate, in the amount of $594,355.25, interest accruing thereafter at the per diem default rate of $7,069.9258899, accrued late charges of $1,500, and for all additional interest, reasonable attorneys' fees, costs, and expenses in connection with as provided by law and according to the terms of the Loan Documents.

**CROSSFIRST FURTHER REQUESTS** as to all Defendants an order from the Court declaring the Mortgages be declared a valid first lien upon the Mortgaged Properties, for and in the amounts above set forth, the Mortgages be foreclosed and the Mortgaged Properties be sold, with the proceeds applied to satisfy the judgment awarded herein to CrossFirst.

**CROSSFIRST FURTHER REQUESTS** an order from the Court that its Security Agreements be enforced so that all of Borrower's and Affiliates' Personal Property be liquidated according to law and that the proceeds be applied to pay the money judgment requested above.

**CROSSFIRST FURTHER REQUESTS** a judgment in personam against Guarantors, and each of them, in the total aggregate amount of $29,683,550.34, which consists of principal in the amount of $29,087,695.09, plus interest accrued to March 14, 2018, at the default rate, in the amount of $594,355.25, interest accruing thereafter at the per diem default rate of $7,069.9258899, accrued late charges of $1,500, and for all additional interest, reasonable attorneys' fees, costs, and expenses in connection therewith as provided by law and according to the terms of the Loan Documents.

**CROSSFIRST FURTHER REQUESTS** an order from the Court appointing a receiver herein as provided in the separate motion for such appointment filed contemporaneously herewith.

**CROSSFIRST FURTHER REQUESTS** that the Court grant it such other and further relief as is equitable and just.

Respectfully submitted,

_____
Mark A. Craige, OBA No. 1992
Victor E. Morgan, OBA No. 12419
CROWE & DUNLEVY
A Professional Corporation
500 Kennedy Building
321 South Boston Avenue
Tulsa, Oklahoma 74103-3313
918.592.9800 Telephone Number
918.592.9801 Facsimile Number
mark.craige@crowedunlevy.com
victor.morgan@crowedunlevy.com

*Attorneys for CrossFirst Bank*